**STATE of Maine**

v.

**Paul G. WILSON.**

Supreme Judicial Court of Maine.

Dec. 20, 1979.

Charles K. Leadbetter, Asst. Atty. Gen. (orally), William R. Stokes, Asst. Atty. Gen., Augusta, John Atwood, Dist. Atty., Rockland, for plaintiff.

Little & Watkinson by Harris R. Bullerwell (orally), Rockland, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

The defendant was convicted of night hunting, 12 M.R.S.A. § 2455,[1] following a jury trial in the Superior Court, Knox County. After imposition of the mandatory sentence, the defendant, who was seventeen years of age at the time of the offense, appealed, challenging the statutory scheme which excludes the offense of night hunting from the jurisdiction of the juvenile court. We affirm the judgment.

The jurisdiction of the juvenile court is established by 15 M.R.S.A. § 3101(2) which provides in pertinent part:

A. The juvenile court shall have exclusive original jurisdiction, subject to waiver of jurisdiction as provided in subsection 4, of proceedings in which a juvenile is alleged to have committed a juvenile crime, as defined in section 3103.

A juvenile is any person who has not attained eighteen years of age. 15 M.R.S.A. § 3003(14). In its pertinent part, 15 M.R.S.A. § 3103(1) defines "juvenile crime":

A. Conduct which, if committed by an adult, would be defined as criminal by Title 17–A, the Maine Criminal Code, or by any other criminal statute outside that code, including any rule or regulation under a statute except for those provisions of Titles 12 and 29, not specifically included in paragraph E . . . .[2]

Night hunting, defined by 12 M.R.S.A. § 2455, is thus outside the jurisdiction of the juvenile court even when that offense is committed by one who is a juvenile.

The appellant argues that this statutory arrangement is "unconstitutional." In support of his claim, the appellant does not refer to any specific constitutional provision; however, we construe his argument as an assertion that the statutory framework constitutes a denial of equal protection to a juvenile charged with night hunting, in violation of the fourteenth amendment to the United States Constitution.

Juvenile courts were unknown to the framers of our state and federal constitutions.[3] It has never been held that a state must establish a juvenile court system. On the contrary, it has been noted that "there is no constitutional right to any preferred treatment as a juvenile offender." *Stokes v. Fair*, 581 F.2d 287, 289 (1st Cir.), *cert. denied*, 439 U.S. 851, 99 S.Ct. 156,

1. Effective December 31, 1979, Section 2455 is repealed and replaced by 12 M.R.S.A. § 7406(5), (6), (10). P.L.1979, ch. 420.

2. Paragraph E of 15 M.R.S.A. § 3103(1) refers, *inter alia*, to 12 M.R.S.A. § 1978(2) and § 2073(2), which deal with the operation of

snowmobiles or watercraft while under the influence of intoxicating liquor or drugs.

3. For a brief sketch of the history of the juvenile court movement, *see In re Gault*, 387 U.S. 1, 14–19, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

58 L.Ed.2d 154 (1978). In establishing a juvenile court, states are free to include or exclude offenses from the jurisdiction of that court. *See, e. g., Vega v. Bell*, 47 N.Y.2d 543, 547–48, 419 N.Y.S.2d 454, 457–58, 393 N.E.2d 450, 452–53 (1979); *Commonwealth v. Wade*, 485 Pa. 453, 462–63, 402 A.2d 1360, 1362–63 (1979). Such a classification of offenses, as any other statutory classification, must be both rationally related to a legitimate legislative objective and free of invidious discrimination. *E. g., State ex rel. Department of Transportation v. National Advertising Co.*, Me., 387 A.2d 745, 750 (1978); *Williamson v. Lee Optical*, 348 U.S. 483, 488–89, 75 S.Ct. 461, 99 L.Ed. 563 (1955). *See generally* W. LaFave & A. Scott, Handbook on Criminal Law § 19 (1972). The purposes of our juvenile court system are set forth in 15 M.R.S.A. § 3002. The purpose of most of the legislation found in Title 12 of the Maine Revised Statutes is the conservation of wildlife. This is particularly true of the prohibition against night hunting. The legislature could rationally have concluded that a person under the age of eighteen who is guilty of night hunting is not in need of the rehabilitative processes of the juvenile court system. We find no constitutional infirmity in such a classification.

The appellant also urges that the complaint should have been dismissed pursuant to 15 M.R.S.A. § 3101(3)(A) which provides:

> If, during the pendency of any prosecution for a violation of law, in any court in the State against any person charged as an adult, it is ascertained that the person is a juvenile, or was a juvenile at the time the crime was committed, the court shall forthwith dismiss the case.

Apparently relying on the literal language of this section read in isolation, the appellant contends that he was entitled to dismissal of the complaint even though the offense with which he was charged was not within the jurisdiction of the juvenile court.

It is fundamental that in construing a section of a comprehensive system of legislation the entire legislative design must be read so that the various provisions of the statutory scheme may be harmonized to achieve the purpose intended by the legislature. *In re Belgrade Shores, Inc.*, Me., 359 A.2d 59, 61 (1976); *Finks v. Maine State Highway Commission*, Me., 328 A.2d 791, 795 (1974).

■ Construing the Juvenile Code in its entirety, it is apparent that the legislature intended Section 3101(3)(A) to apply only when the offense for which the juvenile is charged as an adult comes within the jurisdiction of the juvenile court. That this is the only plausible interpretation of the section can readily be discerned when one reads subdivision B of Section 3101(3), which authorizes the filing of a petition in the juvenile court when a dismissal is ordered under the provisions of subdivision A. Thus, the manifest legislative purpose in enacting subdivision A was to prohibit the trial of a juvenile as an adult for an offense within the jurisdiction of the juvenile court. Since night hunting is not such an offense, the appellant was not entitled to a dismissal under the provisions of Section 3101(3)(A).

■ The appellant further argues that the mandatory three-day jail sentence found in 12 M.R.S.A. § 2455 constitutes cruel and unusual punishment when applied to a person under the age of eighteen.[4] In *State v. Briggs*, Me., 388 A.2d 507, 508–09 (1978), this Court rejected a constitutional challenge to the imposition of a mandatory sentence for night hunting upon an adult. Since this seventeen-year-old defendant has no constitutional right to special treatment as a juvenile, *Stokes v. Fair, supra*, 581 F.2d at 289, we find no merit in the contention that this statute imposes a cruel and unusual punishment.

Finally, the appellant maintains that the presiding Justice erred in refusing to instruct the jury that a witness could refer to

---

4. 12 M.R.S.A. § 2455 provides in part:
Any person convicted of a violation under this section . . . shall be punished by a fine of not less than $500 nor more than $1,000 and by imprisonment of not less than 3 nor more than 5 days for the first offense . . . . No punishment under this section shall be suspended.

his notes to refresh his memory. The only reference in the record bearing on this issue is a conference at side bar between the court and counsel following the conclusion of all of the arguments at which counsel for the defendant stated:

> I in my argument to the jury mentioned records—I mean officers' notes. When the District Attorney referred to them, he told the jury they could not be used. I believe that the jury should be informed that an officer could refer to his notes to refresh his memory and thereafter testify. I think it is important that they know that I wasn't just dreaming this up and I would ask the Court to so inform the jury.

The presiding Justice made no mention of this matter in his instructions to the jury.

The arguments of counsel were not made a part of the record on appeal, and we are therefore in no position to evaluate whether what was said by either counsel on the subject of a witness refreshing his recollection required comment by the court. It was the responsibility of the appellant to prepare and transmit to this Court a record on appeal that was sufficient to permit us to review his claim of error. *See, e. g., State v. Desjardins*, Me., 401 A.2d 165, 168 (1979); *Grondin v. Coyne*, Me., 395 A.2d 459, 460 (1978) (per curiam); *State v. Bellanceau*, Me., 367 A.2d 1034, 1038 (1977). In addition, the defendant waived any claimed errors in the instructions to the jury when at the conclusion of the presiding Justice's charge defense counsel informed the court: "The defense has no objections to the instructions." *See, e. g., State v. Lovell*, Me., 390 A.2d 1107, 1109 (1978); *State v. Childs*, Me., 388 A.2d 76, 78 (1978); M.R.Crim.P. 30(b). Moreover, we have reviewed the testimony of the officer involved and find that he was never asked to refer to his notes nor is there anything in the record which indicates that he ever refreshed his memory from his notes. Merely because counsel may have in his argument introduced an issue totally unrelated to the record does not require the court to instruct the jury on that issue.

The entry is:

Appeal denied.

Judgment affirmed.

POMEROY, J., did not sit.